## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH W. SMITH, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | CV-99-AR-1111-S |
| | ) | |
| AETNA LIFE INSURANCE AND | ) | |
| ANNUITY COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTERED**

MAR - 9 2000

---

### MEMORANDUM OPINION

---

As grounds for its Order of March 9, 2000, certifying a plaintiff class for settlement approval purposes and approving the settlement and dismissal of this action pursuant to the terms set out therein (hereinafter "Order"), the Court enters the following Findings of Fact and Conclusions of Law.

### I.   FINDINGS OF FACT

Based on the evidentiary submissions of the parties, the Court hereby makes the following findings of fact:

### A.   The Complaint

1.   Plaintiff, Joseph W. Smith, filed the above-styled action against Aetna Life Insurance and Annuity Company ("Aetna"), and William Trombley, d/b/a Baker Trombley Financial Group (hereinafter collectively, "Defendants"), asserting five separate

counts captioned as follows:  "Breach of Contract," "Fraudulent Misrepresentation," "Fraudulent Suppression/Deceit," "Deceptive Trade Practices," and "Unjust Enrichment/Quantum Meruit." *See generally* Complaint.

2.    As the factual basis for the five counts asserted in the Complaint, Plaintiff alleged that he was wrongfully charged a "surrender fee" upon surrender of an individual annuity owned by him and transfer of the funds from Aetna to another entity, Cova Financial Life Insurance Company ("Cova").  Complaint, ¶¶ 5-13.  Specifically, the Complaint alleged the following:

a.    Plaintiff and Interstate Batteries Systems of America Trust ("IBSAT") purchased a joint annuity (the "IBSAT joint annuity") from Aetna in about 1974. The IBSAT joint annuity was replaced with an updated joint annuity policy in 1984. Complaint, ¶ 7.

b.    In 1993, Aetna replaced Plaintiff's interests in the IBSAT joint annuity with the Aetna individual annuity at issue in this dispute.  Complaint, ¶ 8.

c.    On or about September 1, 1998, IBSAT transferred management of its annuity plan from Aetna to Cova. Complaint, ¶ 12.

d.    Aetna improperly withheld surrender fees "related to the transfer of funds to Cova."  Complaint, ¶ 13.

3.    Plaintiff filed the above-styled action on behalf of a putative plaintiff class defined to include "retail dealers for products marketed by Interstate Batteries," Complaint, ¶ 16:

2

a.  who "previously participated in a tax-offered plan [the IBSAT joint annuity] that was managed by Aetna;"

b.  who, "on or about 1993," "surrendered their joint annuity and received an individual annuity" managed by Aetna;

c.  whose annuity "plans were [subsequently] transferred to Cova for administration purposes;" and

d.  who "were wrongfully charged a surrender fee" by Aetna in connection with the transfer to Cova.

Complaint, ¶ 19.

## B.  Discussions and Discovery Pertaining to the Proposed Settlement of Class Claims

4.  Subsequent to the commencement of this action, Plaintiff and Defendant Aetna engaged in settlement discussions including the disclosure of information from Aetna to Plaintiff regarding the allegations contained in the Complaint. Specifically, Plaintiff and class counsel obtained information from Aetna concerning the "surrender fees" or "Deferred Sales Charges" that Aetna had withheld from the putative class members. Affidavit of Joseph W. Smith (hereinafter "Smith Affidavit"), ¶ 2; Affidavit of James S. Roberts, Jr. (hereinafter "Roberts Affidavit"), ¶ 3. Among the materials produced to class counsel and Plaintiff in the course of negotiations with Aetna were two spreadsheets (hereinafter "the Spreadsheets") generated by Aetna indicating the amount of Deferred Sales Charges actually withheld from the surrender values of Aetna individual annuities owned by participants in the Interstate Battery Retirement Savings Plan ("the Plan") and the amount of Deferred Sales Charges that should have been withheld upon surrender of those annuities. Together, the two

3

Spreadsheets included information pertaining to all full and partial surrenders of Aetna individual annuities by Plan participants between April 1, 1993, and October 31, 1999, including those surrenders that involved transfers of funds from Aetna to Cova.   Smith Affidavit, ¶ 3; Roberts Affidavit, ¶ 4; Affidavit of Dorothy L. Sousa (hereinafter "Sousa Affidavit"), ¶ 2 and attached Exhibits A & B.

   5. In discussions with class counsel and through such materials as the Spreadsheets, Defendant Aetna confirmed to Plaintiff and class counsel that some individual annuity owners, including Plaintiff, had been assessed Deferred Sales Charges in excess of those prescribed by the terms of their individual annuity contracts. Smith Affidavit, ¶ 2; Roberts Affidavit, ¶ 3.

   6. From the Spreadsheets provided by Aetna, class counsel selected a statistically meaningful number of Plan participants who surrendered their individual annuities subsequent to 1993.  For each of these annuity owners, Aetna provided to class counsel information sufficient for class counsel to confirm: 1) the amount of the Deferred Sales Charges actually withheld from the surrender value of the surrendered annuity; and 2) the amount of Deferred Sales Charges that should have been withheld from the surrender value of the annuity pursuant to the terms of the annuity contract.  Smith Affidavit, ¶ 4; Roberts Affidavit, ¶ 5.

   7. Aetna has submitted the Spreadsheets for the Court's consideration as Exhibits A and B to the Affidavit of Dorothy L. Sousa.  In that affidavit, Aetna further stipulated to this Court that some annuity owners were overcharged Deferred Sales Charges

in connection with the full or partial surrender of their individual annuities and that, to the best of Aetna's knowledge and belief, the amounts by which such annuity owners were overcharged were accurately reflected in the Spreadsheets. Sousa Affidavit, ¶¶ 3, 4, 6 and attached Exhibits A & B.

        8.    Based on their negotiations with Aetna, their review of the materials provided by Aetna, and Aetna's stipulations to the Court, Plaintiff and class counsel submitted to this Court that they believe the information contained in the Spreadsheets to be accurate and the product of honest, good faith efforts on the part of Aetna to settle the class claims in this action. Smith Affidavit, ¶ 5; Roberts Affidavit, ¶ 6. Based on the foregoing facts, this Court hereby finds the information contained in the Spreadsheets to be accurate and the product of honest, good faith efforts on the part of Aetna to settle the class claims in this action.

        9.    Based on the documents and information compiled and produced to Plaintiff and class counsel by Aetna and submitted to this Court, the Court notes the following facts pertaining to the Deferred Sales Charges withheld from Plan participants upon surrender of their individual annuities:

        a.    346 partial or full surrenders of Aetna individual annuities owned by Plan participants occurred between April 1, 1993 and October 31, 1999.

        b.    45 of the 346 surrenders by Plan participants resulted in the assessment of Deferred Sales Charges in *excess* of those prescribed under the terms of the annuity contract. Because some Plan participants were assessed Deferred Sales Charges in connection with multiple surrenders of the same individual

annuity (i.e. multiple partial surrenders or partial surrenders followed by a full surrender), only 39 Plan participants were overcharged Deferred Sales Charges upon surrender of their Aetna individual annuities.

c.  269 of the 346 surrenders by Plan participants resulted in the assessment of the *correct* Deferred Sales Charges under the terms of the annuity contract.

d.  32 of the 346 surrenders by Plan participants resulted in the assessment of Deferred Sales Charges in an amount *less* than prescribed under the terms of the annuity contract.

e.  The largest amount of overcharge withheld from any of the 39 annuity owners who were assessed Deferred Sales Charges in excess of those prescribed under the terms of the annuity contract was $13,379.38, the amount by which Plaintiff Joseph W. Smith was overcharged.

f.  Of the 39 annuity owners who were overcharged Deferred Sales Charges upon full or partial surrender of their individual annuities:

   i)  11 were overcharged in an amount less than $1,000.00;

   ii)  21 were overcharged in an amount between $1,000.00 and $5,000.00;

   iii)  5 were overcharged in an amount between $5,000.00 and $9,000.00; and

   iv)  2 were overcharged in an amount greater than $9,000.

Sousa Affidavit, attached Exhibits A, B & C.

10.  At all times during this action and during class counsel's and Plaintiff's negotiations with defendant Aetna, Aetna has consistently asserted that the miscalculation of the Deferred Sales Charges and the resulting underpayments to members of the plaintiff

6

class at the time of surrender were the result only of inadvertent error.  Aetna has at all times contested Plaintiff's allegations, stated in the Complaint, that any overcharged Deferred Sales Charges resulted from any fraudulent, deceptive, deliberate, intentional, reckless or wanton misconduct by Defendants.  Smith Affidavit, ¶ 6; Roberts Affidavit, ¶ 7.

11.    Aetna has stipulated to the Court that it has implemented review procedures to prevent other Plan participants from being overcharged Deferred Sales Charges upon surrender of their Aetna individual annuities.  Sousa Affidavit, ¶7.

12.    Based on the information gathered by counsel, including the documents and materials received from Aetna by Plaintiff and class counsel, and the settlement negotiations with counsel for Aetna, Plaintiff and class counsel have submitted to this Court that they are aware of no evidence contradicting Aetna's assertion that the miscalculation of the Deferred Sales Charges and the resulting underpayments to members of the plaintiff class at the time of surrender resulted only from inadvertent error.  Smith Affidavit, ¶ 7 ; Roberts Affidavit,  ¶ 8.  Further, this Court is aware of no such evidence.

13.    After comprehensive negotiation and discussion and based on Plaintiff's and class counsel's  thorough review of the documents and materials provided to Plaintiff by Aetna, Plaintiff and Defendants, through counsel, have conditionally agreed to the settlement and dismissal of all individual and class claims in this action pursuant to the terms and conditions set out above in the Court's Order.   The proposed settlement was conditioned upon this Court's certification of a plaintiff class, as defined above, for settlement purposes and upon the Court's approval of the proposed settlement terms.   Smith Affidavit, ¶ 8;

Roberts Affidavit, ¶ 9; *see also*, Motion for Certification; Defendant's Consent to Conditional Class Certification for Settlement Notice and Fairness Approval Purposes.

14.     Plaintiff and class counsel have informed the Court that, given the facts and circumstances underlying this action, as informed by the documents and materials provided by Aetna during good faith settlement negotiations, Plaintiff and class counsel believe the settlement set out in the Court's Order is fair, adequate and reasonable, and is in the best interests of the putative members of the Settlement Class.  Smith Affidavit, ¶ 9; Roberts Affidavit, ¶ 10.

### D.     Class Requirements

15.     Class Counsel has attempted to deliver a Class Notice to each of the 39 members of the putative class by Registered Mail.  Thirty-seven of the members have been contacted in this manner.  Class counsel reported to the Court at the fairness hearing on February 25, 2000, that the Registered Mail to two of the members, Mr. Greg Anderson ("Mr. Anderson") and Mr. Raymond Smith ("Mr. R. Smith") had been returned to class counsel as undelivered.  Class counsel subsequently attempted delivery by Registered Mail to Mr. Anderson and Mr. R. Smith at additional addresses provided by their employer, Interstate Batteries Systems of America ("Interstate Batteries").  These attempts to provide Class Notice to Mr. Anderson and Mr. R. Smith were also unsuccessful.

16.     Subsequent to the fairness hearing, class counsel spoke personally with Mr. R. Smith.  Mr. R. Smith provided class counsel an address for the delivery of an overnight letter, and class counsel sent him a Class Notice, a form to indicate whether Mr.

8

R. Smith would participate in the class or opt out, and a return overnight envelope, postage and fees prepaid. As of yet, however, Mr. R. Smith has not returned his form or otherwise contacted either counsel or the Court. Mr. Anderson has not yet been successfully located, but class counsel is continuing to make attempts to do so. Affidavit of Class Counsel.

17. The Settlement Class consists of 39 members.[1/] The Settlement Class members reside in numerous states including but not limited to Alabama, Texas, Washington, Illinois, Florida, and Connecticut. Sousa Affidavit, ¶ 6 and attached Exhibit C.

18. All of the Aetna individual annuities owned by Settlement Class members were obtained by Plan participants pursuant to the Plan and were part of the same Aetna annuity program. The terms and provisions of each of the annuity contracts owned by the Settlement Class members are identical with respect to the assessment and/or withholding of Deferred Sales Charges. Sousa Affidavit, ¶¶ 4-5.

19. Aetna withheld from Plaintiff Joseph W. Smith a Deferred Sales Charge of $13,379.38 upon surrender of his individual annuity. Because, under the terms of the annuity contract, Aetna should not have withheld any Deferred Sales Charge from Plaintiff, Plaintiff was overcharged $13,379.38 upon surrender. No other member of the Settlement Class was overcharged by an amount greater than $13,379.38 in connection with the surrender of their individual annuity. Sousa Affidavit, attached Exhibits A, B & C.

---

[1/]     Of course, should Mr. Anderson and/or Mr. R. Smith opt-out of the Settlement Class, the class would consist of only 37 or 38 members.

9

20.     Class Notice, in the form established by this Court, was provided by Registered Mail to each of the members of the Settlement Class. As indicated above, class counsel has informed the Court that it has received return receipts verifying successful service of Class Notice on 37 of the 39 members of the Settlement Class. In addition, one of the remaining class members, Mr. R. Smith, was provided written class notice after the February 25, 2000 hearing. As of the date of the Court's Order, one class member, Mr. Anderson, had not received Class Notice.

21.     No member of the Settlement Class has exercised his or her option to file with this Court any objection to the proposed settlement of this class action, as allowed by the Class Notice provided to the class members. Nor has any member of the Settlement Class filed with this Court notice of his or her intent to opt-out of this class action.

## II.     CONCLUSIONS OF LAW

Based on the above Findings of Fact, the Court hereby makes the following conclusions of law.

### A.     Class Certification

The party seeking class certification bears the burden of proof. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 2372 (1982); *Morrison v. Booth*, 763 F.2d 1366, 1371 (11th Cir. 1985). The class certification determination is to be made at the pleading stage of the litigation; accordingly, the court has no authority to inquire into the actual merits of the suit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152, 40 L. Ed.2d 732 (1974). However, the Court cannot simply rely on the

10

assurances of the party moving for certification, but must go beyond the pleadings to "understand the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. American Tobacco Co.*, 84 F. 3d 734, 744 (5th Cir. 1996); *see also Falcon*, 457 U.S. at 161, 102 S. Ct. at 2372; *Washington v. Brown & Williamson Tobacco Corp.*, 959 F. 2d 1566, 1571 (11th Cir. 1992). Although an evidentiary hearing on class certification is not necessarily required, *see In re American Medical Systems, Inc.*, 75 F. 3d 1069, 1079 (6th Cir. 1996), the United States Supreme Court has made clear that a court considering class certification must be "satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Falcon*, 457 U.S. at 161, 102 S. Ct. at 2372. Finally, while the party seeking certification bears the burden of proof, "the interests of justice require in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg v. Gagnon*, 766 F. 2d 770, 785 (3rd Cir. 1985).

In order to meet the burden of proof, the party seeking class certification must establish that each of the requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied. Rule 23(a) enumerates the following four prerequisites which must be established before any action may be maintained as a class action: (1) the class must be so numerous that joinder of all members is impracticable **(numerosity)**; (2) there must be questions of law or fact common to the class **(commonality)**; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class **(typicality)**; and (4) the representative parties must be able to fairly and adequately protect the interests of the class

11

**(adequate representation)**.   Rule 23(a) FED. R. CIV. P.   In addition, one of the three

requirements set forth in Rule 23(b) must be met.  Plaintiff in this action seeks certification

under 23(b)(3), which provides for certification where:

> the court finds that the questions of law or fact common to the members of the
> class **predominate** over any questions affecting only individual members, and
> that a class action is **superior** to other available methods for the fair and
> efficient adjudication of the controversy.

FED. R. CIV. P. 23(b)(3) (emphasis added).

  As further set out below, the Court finds that the requirements of Rule 23(a)

and Rule 23(b)(3) have been satisfied in this case.

  *1. Numerosity.*

  Rule 23(a)(1) requires that the class be so numerous that joinder of all members

is impracticable.  Impracticability does not mean impossibility; rather, the moving party need

only show extreme difficulty or inconvenience of joining all members of the class.  *Forbush*

*v. Wallace*, 341 F. Supp. 217, 220 (M.D. Ala. 1971) *affirmed*, 405 U.S. 970, 92 S. Ct. 1197,

31 L. Ed. 2d 246 (1972); *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993).

There is no bright-line rule for determining when the numerosity requirement has been met.

While it has been generally accepted by the Circuit Courts of Appeal that 40 class members

are sufficient to meet the requirement, *see Cox v. American Cast Iron Pipe Co.*, 784 F. 2d

1546, 1553 (11th Cir. 1986); 5 MOORE'S FEDERAL PRACTICE, ¶ 23.22[3][a], at n. 8 (1999),

classes with fewer than 40 members are routinely certified.  In fact, the Eleventh Circuit

Court of Appeals has specifically held that a class of 31 members satisfies the numerosity

requirement of Rule 23(a)(1). *Kilgo v. Bowman Transportation, Inc.*, 789 F. 2d 859, 878 (11th Cir. 1986). Generally, where the proposed class contains fewer than 40 members but more than 21, whether the numerosity requirement is satisfied varies "according to other factors." *Cox*, 784 F. 2d at 1552, *citing* 5 MOORE'S FEDERAL PRACTICE, ¶ 23.22[3][a]. As indicated by the Eleventh Circuit, such other factors include, for instance, the geographic dispersion of the putative class members and the feasibility of joining those members in the class litigation. *Kilgo*, 789 F. 2d at 878.

The Court finds that the numerosity requirement is satisfied in the present action. The proposed Settlement Class of annuity owners who were overcharged Deferred Sales Charges consists of thirty-nine (39) members. Thus, the size of the proposed class exceeds the class size specifically approved by the Eleventh Circuit in *Kilgo*. Further, the members of the Settlement Class are spread across numerous states in different geographic regions of the country, making their joinder in this action considerably more difficult and inconvenient for those class members. *See Kilgo*, 789 F. 2d at 878 (finding that dispersal of class members across a "wide geographic area" including Jacksonville, Florida, Atlanta, Georgia, and Birmingham, Alabama, weighed in favor of finding of numerosity). Finally, the amounts by which many of the members of the Settlement Class were overcharged were sufficiently small that their joinder and presence in this action would be uneconomical and impracticable. *See Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965

13

(1985) (class action allows plaintiffs to pool claims that would be uneconomical to litigate individually). The numerosity requirement is therefore satisfied in this case.[2]

   2.   *Commonality and Typicality.*

Rule 23(a)(2) requires that there be questions of law or fact common to the class members. Typically, "the threshold of commonality is not high." *Morris v. Transouth Financial Corp.*, 175 F.R.D. 694, 697 (M.D. Ala. 1997). The Rule requires only that resolution of common questions affect all or a substantive number of the class members. *Id; Taylor v. Flagstar Bank*, 181 F.R.D. 509, 516 (M.D. Ala. 1998). It has been well established that differences in individualized damages claims will not be sufficient to defeat commonality. *Morris*, 175 F.R.D. at 697; *Taylor*, 181 F.R.D. at 516.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Similar to the commonality requirement of 23(a)(2), the typicality requirement has been described as "somewhat of a low hurdle." *Taylor*, 181 F.R.D. at 517. This part of the Rule requires that "there must be a sufficient nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Id.*, *citing Kornberg v. Carnival Cruise Lines, Inc.*, 741 F. 2d 1332, 1337 (11th Cir. 1984). Stated another way, it requires that the representatives' claims arise from the "same course of events" as those of the class. *Marisol A. v. Giuliani*, 1998 WL 199927 (S.D.N.Y. 1998), *citing In re the Drexel Burnham Lambert Group, Inc.*,

---

[2] The Court notes that these factors would weigh in favor of finding numerosity even if the Settlement Class is reduced to 37 or 38 members.

960 F. 2d 285 (2d Cir. 1992), *cert dismissed* 506 U.S. 1088, 113 S. Ct. 1070 (1993). Thus, the representative must have "essentially the same claims" as the class members, *De La Fuente v. Stokely-Van Camp, Inc.* 713 F. 2d 225, 232 (7th Cir. 1983), and must have the incentive to prove all elements of the claims of those members. *In re NASDAQ Market-Makers Antitrust Litigation,* 169 F.R.D. 493, 510 (S.D.N.Y. 1996).[3/]

Plaintiff's claims in this action satisfy both the commonality and typicality requirements. Questions of fact and law common to the claims of all members of the Settlement Class arise because: 1) each class member obtained its Aetna individual annuity under the Interstate Battery Retirement Savings Plan; 2) each of the Aetna individual annuities owned by class members is part of the same annuity program; 3) the terms and provisions of each of the individual annuities are identical with respect to the assessment or withholding of Deferred Sales Charges; and 4) each of the Settlement Class members was assessed Deferred Sales Charges in excess of those prescribed under the terms of their annuity contracts. While the amounts by which the Settlement Class members were overcharged vary, those individual damage elements do not defeat commonality, especially

---

[3/] As demonstrated in the following section, both the commonality requirement of 23(a)(2) and the typicality requirement of 23(a)(3) "tend to merge with the adequacy of representation requirement" of 23(a)(4). *Falcon,* 457 U.S. at 158, 102 S. Ct. at 2371; *Nelson v. U.S. Steel Corp.,* 709 F. 2d 675, 679 (11th Cir. 1983). In essence, both of these requirements help to ensure that the interests of the class are adequately protected by ensuring that the representatives have the same or similar interests as the absent class members. *Falcon,* 457 U.S. at 158, 102 S. Ct. at 2371; *Nelson,* 709 F. 2d at 675.

where, as here, individual recoveries are easily calculable using a mathematical formula.[4/]
There are therefore sufficient common questions of law and fact to meet the low threshold
of commonality.

These same *common* links between the claims of each of the Settlement Class
members further establish that the plaintiff's claims in this action arose from the same
"course" or "nexus" of events as the claims of the class members and are therefore *typical*
of the claims of the class members. Plaintiff's claims that he was assessed an excessive
Deferred Sales Charge arise from the same annuity program, the same contract terms, and
the same factual circumstances – the surrender of the individual annuity – as the claims of
the other Settlement Class members. Plaintiff thus has the same interests as the absent class
members in prosecuting his claim for the excessive surrender fee. In fact, because plaintiff
was overcharged the most of any Settlement Class member, he has the most substantial
interest of any class member in pursuing these claims. The typicality requirement has
therefore been satisfied in this case.

3.    *Adequate Representation.*

Rule 23(a)(4) provides that the class representative must "fairly and adequately
protect the interests of the class." Two inquiries are necessary to determine whether the
adequacy requirement of Rule 23(a)(4) has been met: (1) the class representatives must not

---

[4/] The amount by which each member of the Settlement Class was overcharged has already
been calculated and stipulated by Aetna. *See* Sousa Affidavit, ¶ 6 and attached Exhibits A, B & C.
Those amounts are included in Schedule A, attached to the Court's Order.

have interests antagonistic to the interests of the other class members; and (2) counsel for the plaintiffs must possess competence to undertake the particular litigation. *Morris*, 175 F.R.D. at 697, 698, *citing Weiss v. York Hospital*, 745 F. 2d 786, 811 (3d Cir. 1984); *Griffin v. Carlin*, 755 F. 2d 1516, 1532 (11th Cir. 1985); *Eisen v. Carlisle & Jacquelin*, 391 F. 2d 555, 562 (2d. Cir. 1968); *Falcon*, 457 U.S. at 158, 102 S. Ct. at 2371.

The Court's first inquiry concerns the interests of the class representatives. This analysis is similar to and incorporates the analysis performed by the Court under the commonality and typicality requirements discussed in the previous section. *Falcon*, 457 U.S. at 158, 102 S. Ct. at 2371; *Morris*, 175 F.R.D. at 697. In order to fully protect the interests of the class members, the representative's claims must be sufficiently similar to those of the class to ensure that the representative will assert and defend all the interests of the class "with forthrightness and vigor." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F. 2d 718, 726 (11th Cir. 1987); *see also Morris*, 175 F.R.D. at 698, *citing In re American Medical Systems, Inc.* 75 F. 3d 1069, 1083 (6th Cir. 1996).

For the same reasons that Plaintiff's claims in this action satisfy the commonality and typicality requirements of Rule 23(a)(2) and (3), Plaintiff is an adequate representative for the absent class members. Because Plaintiff has essentially the same claims as the class members, the Court finds that he has no interests antagonistic to those of the absent class members. Rather, as stated above, Plaintiff has a more substantial interest than any other individual class member in vigorously pursuing the common class claims based on Aetna's overcharge of Deferred Sales Charges.

In addition, both the nature of the conditional class certification for settlement purposes only and the terms of the Proposed Settlement in this action provide further evidence that plaintiff's interests do not conflict with those of the absent class members. Under the Proposed Settlement, Plaintiff, like every other settlement class member, will receive exactly the amount by which he was overcharged when Aetna withheld Deferred Sales Charges from his annuity, plus interest. In addition, the same rate of interest will be applied uniformly to all class members. Thus, except insofar as he was the class member who was overcharged the most by Aetna, Plaintiff will receive no compensation or benefit that is in any way greater or different than that received by the absent class members.

Nor will the attorney's fees recovered by Plaintiff's attorney, as class counsel, create any conflict between the interests of Plaintiff, or his attorney, and the class. In fact, plaintiff's attorney's recovery of fees in this action will in no way affect or compromise the recovery of any of the class members. While undersigned counsel's recovery will be based on the total amount paid to class members pursuant to the Proposed Settlement, that fee will be in addition to, and will not diminish, the amounts paid to the class members.

Moreover, the Proposed Settlement will dispose of *only* those claims that Plaintiff has in common with the class members. Under the terms of settlement and dismissal approved in the Court's Order, upon reimbursement by Defendants of the overcharge amounts, only class claims relating to the overcharge of Deferred Sales Charges will be dismissed. No other causes of action, to the extent they may exist, are affected by the class members' inclusion in the Settlement Class. Thus, it does not appear to the Court that

this is a situation where a conflict arises because the named plaintiff has compromised broad claims of class members in order to gain a disproportionate recovery for himself or his attorney.[5]

Finally, to the extent any conflict of interest may exist, the members of the Settlement Class had the right to opt-out if they believed the proposed settlement was unfair to them. Notably, no members of the Settlement Class have exercised their right to opt-out or voiced any objection to the proposed settlement and dismissal of this class action. The Court therefore finds that the named plaintiff has no interests antagonistic to those of the absent class members and can adequately represent the interests of those class members.

The Court's second inquiry under Rule 23(b)(4)'s adequacy requirement concerns counsel for the class representatives. Counsel for the representatives must be "qualified, experienced, and generally able to conduct the litigation." *Weiss*, 745 F.2d at

---

[5]       In fact, although the settlement and dismissal approved here dispose of certain class claims, the parties have contended that there is no "compromise" of any claims. Defendants have acknowledged from the outset of this suit that the members of the Settlement Class are owed reimbursement of Deferred Sales Charges under their annuity contracts, and Aetna has agreed to fully reimburse those charges with interest. Thus, the parties agree, any claims for breach of contract are not being compromised -- they are being conceded and satisfied by Aetna. The Court agrees with this contention.

Although the named plaintiff has alleged several fraud and misrepresentation claims in the Complaint based on his assertion that he was purportedly misled into believing that certain provisions concerning the surrender of this annuity would be included in the annuity contract, Aetna has stipulated that those provisions are, in fact, part of the annuity contracts owned by Plaintiff and every other Settlement Class member. It therefore appears to the Court that there is no basis in fact for any claim in this action other than breach of contract. *See, e.g., Wade v. Chase Manhattan Mortgage Corp.*, 994 F. Supp. 1369, 1378 (N.D. Ala. 1997) (where plaintiff presents no evidence that defendant intended not to perform contract terms at time contract was entered into, only breach of contract – not promissory fraud – claim is stated).

811; *See also Morris*, 175 F.R.D. at 698; *Eisen*, 391 F. 2d at 562. The representative himself or herself must also have some involvement in and knowledge of the proceedings. *Kirkpatrick*, 827 F. 2d at 726. The Court finds that class counsel has experience prosecuting class litigation and is fully capable, both professionally and economically, of safeguarding the interests of the Settlement Class members. In addition, the class representative himself has been extensively involved in the commencement and prosecution of this lawsuit and has a comprehensive understanding of the factual and legal issues which this action presents. Consequently, the Court finds that Plaintiff and class counsel are adequate representatives for the absent members of the settlement class.

    4.    *Rule 23(b)(3) Predominance and Superiority.*

    Rule 23(b)(3) includes two basic requirements: 1) that common questions predominate over individual issues; and 2) that class treatment is superior to other methods of adjudication. FED. R. CIV. P. 23 (b)(3). In determining whether theses two basic requirements are met in any given putative class action, the Court should consider, *inter alia*:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b)(3).

    **a.    Predominance of Common Issues.**

    The first requirement of Rule 23(b)(3), predominance, requires that

> the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.

*Taylor*, 181 F.R.D. at 520.  Although this inquiry is similar to that conducted under the commonality and typicality requirements of Rule 23(a), the predominance inquiry has been described as "more rigorous." *Id.* at 517, *citing Amchem*, 521 U.S. at 609, 117 S. Ct. at 2243. The standard of review for the predominance requirement is that it "is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class valueless." *In re Nasdaq Market-Makers Antitrust Litigation*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).  As the Middle District of Alabama stated in a recent consumer fraud case:

> [t]he determination . . . "involves an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class action basis."  Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1771 at p. 519.

*Morris,* 175 F.R.D. at 699.  Importantly, individualized questions concerning damages to class members will not defeat the predominance requirement where the "fact of injury" is common to the class or where class injuries result from a common course of conduct. *Morris*, 175 F.R.D. at 700; *Lockwood Motors, Inc. v. General Motors Corp.*, 162 F.R.D. 569, 582 (D. Minn. 1995).

In this case, the common questions set out above under the Rule 23(a) analysis predominate over any individual questions which may arise.  Again, each of the proposed class members obtained the Aetna annuity contract at issue under the Interstate Battery

Retirement Savings Plan, and each of the individual annuities involved were part of the same annuity program. Each of the individual annuity contracts contained identical provisions concerning the assessment of Deferred Sales Charges. Further, each of the proposed class members was assessed Deferred Sales Charges in excess of those prescribed by the annuity contract upon surrender of the annuity. Although the actual amount that each class member was overcharged will vary according to certain individual factors, such as the amount invested in the Plan and the length of time the investment remained in the Plan, these individual determinations are secondary issues that do not "overwhelm" the common interests of the parties and the Court in resolving these class claims in the most efficient and economic manner. In fact, because these individualized damages determinations would require only a simple calculation, which has already been completed by the parties, these individual questions have required essentially no consideration by the Court.

In addition, although the plaintiff's Complaint contains allegations of fraudulent misrepresentations by Defendants concerning the inclusion of certain surrender fee provisions in the annuity contract, Defendants acknowledge that those terms are, in fact, included in the annuity contracts of the class members and that, as a result of an inadvertent error, each of the proposed Settlement Class members was assessed Deferred Sales Charges in excess of those prescribed by those provisions. Consequently, as indicated above, this action involves only breach of contract claims. Thus, the reliance by any individual class member on any representations or omissions concerning the amount of Deferred Sales Charges to be assessed has not been an issue before the Court. In this breach of contract

22

situation, the individualized issues of reliance which often overwhelm common questions in consumer fraud cases, *see Taylor*, 181 F.R.D. at 520-524, are not presented here. Rather, the breach of contract damages (i.e., the amount of Deferred Sales Charges to be reimbursed to each class member) depend not on individualized issues of person-to-person representations or omissions, but on the terms of the annuity contract and the class member's date of surrender. Common questions therefore predominate for purposes of settling the class claims presented in this action.

### b.   Superiority.

Rule 23(b)(3) also requires that the Court determine that class treatment is superior to other methods of adjudicating the controversy. In making this determination, the Court should inquire as to whether "the objectives of the class procedure will be achieved in the particular case" by certification. *Morris*, 175 F.R.D. 700. As stated in *Morris*:

> One of the most important objectives of the class action procedure is the aggregation of a small number of claims to allow for relief in situations where it might not otherwise be obtainable. As the Supreme Court has recently noted:
>
>> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Morris*, 175 F.R.D. at 700 (quoting *Amchem*, 521 U.S. at 617, 117 S. Ct. at 2246).

This case presents an ideal example of a situation where class treatment is superior.  Maintenance of a class action suit will provide absent class members with their "day in court" without overburdening the judicial system with a multiplicity of lawsuits.  In addition, given the small amounts by which most of the Settlement Class members were overcharged, individualized prosecution of claims would be economically unfeasible for many of them. The proposed class treatment would provide those class members with an opportunity to recover for such claims without the inconvenience of prosecuting a civil action, and without having their individual recoveries reduced by attorneys' fees.  Further, only plaintiffs who have been overcharged would be included in the proposed Settlement Class, and only claims relating to the overcharge of Deferred Sales Charges will be resolved by the class settlement.  Any other unrelated claims of absent class members, to the extent they exist, would remain available for separate prosecution should class members wish to pursue them.  Finally, it does not appear that any class members wished to proceed with their own actions with respect to the assessment of Deferred Sales Charges because none exercised their rights to opt-out.  Because certification of the proposed Settlement Class would achieve the fundamental goals of the class action and is in the best interest of the class members, the Court finds class treatment is superior to other methods of adjudicating this dispute.

In addition, while settlement classes do not have to meet the manageability requirements of Rule 23(b)(3),[6/] the Court notes that management of this case as a class action has presented no significant manageability problems for the Court. The members of the proposed Settlement Class have been identified and individual notice to those members has been achieved without substantial difficulty. Also, given the relatively small size of the class, managing opt-out requests and objections to the proposed settlement has not presented significant problems.

Finally, the factors specified in Rule 23(b)(3) support certification in this case. First, given the common issues and relatively small amounts at stake, the Court finds that the interests of absent class members in controlling the prosecution of separate actions are insubstantial, especially considering the efficient opportunity for a complete recovery by the class presented by this action. Any interest class members have in controlling separate litigation was protected by their right to opt-out (which was not exercised by any class member). Second, the Court is aware of no other litigation by any member of the Settlement Class against the defendants hereto concerning the withholding of excessive Deferred Sales Charges under the individual annuity contracts involved here. Third, from a judicial economy standpoint, the concentration of the class claims in this forum, where the action has already been commenced and negotiations conducted, is in the interest of the Plaintiff, the class members, the Defendants, and the judicial system as a whole. Finally, as indicated

---

[6/]     *See Amchem*, 521 U.S. at 620, 117 S. Ct. at 2248; *Taylor*, 175 F.R.D. at n.3. ("Settlement classes do not have to meet the Rule 23(b)(3) requirement of manageability.").

above, there are no manageability problems associated with the settlement of this action. The Court therefore finds that class treatment is superior in this action.

     5.    *Conclusion.*

Because each of the requisites of Rule 23 are satisfied with respect to the Proposed Settlement of the class claims in this action and because class certification is in the best interest of all involved, the Court hereby finds that certification of the Settlement Class set out above is proper.

**B.    Settlement Approval**

Rule 23(e) of the Federal Rules of Civil Procedure requires federal courts to approve the dismissal or compromise of any class action. FED. R. CIV. P. 23(e). As recently stated by the United States District Court for the Middle District of Alabama in approving a proposed settlement of class claims under Rule 23(e):

> It is well settled that judicial policy favors voluntary settlement of class action as well as other cases. Cotton v. Hinton, 559 F. 2d 1326, 1331 (5th Cir. 1977). It is also established, however, that courts must independently evaluate class-action settlements for **fairness, adequacy, and reasonableness**, since the settlement process may be subject to abuse.

*Dillard v. City of Foley*, 926 F. Supp. 1053, 1062 (M.D. Ala. 1996) (emphasis added).

The Eleventh Circuit Court of Appeals has established several helpful factors to which federal district courts may look in performing their independent evaluation of the adequacy of a proposed class settlement. These include:

> (1) the views of the class members; (2) the views of class counsel; (3) the substance and amount of opposition to the

settlement; (4) the possible existence of collusion behind the settlement; (5) the stage of the proceedings; (6) the likelihood of success at trial; (7) the complexity, expense and likely duration of the lawsuit; and (8) the range of possible recovery.

*Austin v. Hopper*, 28 F. Supp. 2d 1231, 1236 (M.D. Ala. 1998), *citing Leverso v. Southtrust Bank of Al., Nat. Assoc.*, 18 F. 3d 1527, 1530 n. 6 (11th Cir. 1994) and *Bennett v. Behring Corp.*, 737 F. 2d 982, 986 (11th Cir. 1984). Importantly, district courts may exercise discretion in considering and balancing these various factors while determining the fairness of a proposed settlement. *See, e.g., Leverso*, 18 F. 3d at 1530 (abuse of discretion standard applies to district court's approval of settlement); *Holmes v. Continental Can Co.*, 706 F. 2d 1144, 1147 (11th Cir. 1983) (stating same standard). If, after performing its independent evaluation, a court is convinced that the proposed settlement is fair, adequate and reasonable, the court should approve the settlement. *See, e.g., Mashburn v. Nat'l Health Care, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("[C]lass action settlements will be disapproved only upon 'considerable circumspection.'").

> *1.*     *No Class Members Have Objected to or Opted-Out of the Proposed Settlement.*

"In determining whether a settlement agreement is fair, adequate, and reasonable, the obvious first place a court should look is to the views of the class members." *Austin*, 28 F. Supp. 2d at 1236. Looking to the views of class members informs both the first and third factors set out by the Eleventh Circuit (the views of class members and objections to the proposed settlement). With respect to these factors, the Court again notes that no class

member in this action has opted out or raised any objection to the proposed settlement of the class claims.   This lack of objection indicates that the class members themselves overwhelmingly view the proposed settlement as fair, adequate and reasonable, thus satisfying the first factor. Further, the lack of opposition by class members supports judicial approval of the settlement under the third factor as well.

2.   *Views of Class Counsel.*

Under the second factor, the Court should look to class counsel's views with respect to the settlement. *Dillard*, 926 F. Supp. at 1063; *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) ("In performing the balancing task, the trial court is entitled to rely upon the judgment of experienced counsel for the parties."). In this action, class counsel for the plaintiff class has demonstrated his belief that the proposed settlement is fair, adequate and reasonable. As class counsel averred in his affidavit:

> Given the facts and circumstances underlying the Complaint in this action, as informed by the documents and materials provided to Mr. Smith and me by Aetna during good faith settlement negotiations and by Aetna's stipulations to the Court, and considering both my consultations with my client, Mr. Smith, and my obligations to act as Class Counsel for the putative Settlement Class, I believe the proposed settlement terms set out in the previous paragraph are fair, adequate and reasonable, and in the best interests of Mr. Smith and the putative members of the Settlement Class that Mr. Smith and I seek to represent in this action.

Affidavit of James S. Roberts, ¶ 10. Thus, the second factor supports judicial approval of the proposed settlement in this case.

3.    *There is No Evidence of Collusion.*

Because there is no evidence or suggestion of collusion between the parties, the Court finds that the fourth factor also supports judicial approval of the proposed settlement. Here, no class member has raised any allegation or provided any evidence of collusion. Further, the characteristics of the settlement itself do not indicate that the interests of the class members have been sacrificed for the interests of the parties involved in negotiating the settlement. *See Dillard*, 926 F. Supp. at 1063 ("Collusion can exist when the named plaintiffs or class counsel benefit from a proposed settlement at the expense of the rest of the class, see e.g., Holmes v. Continental Can Co., 706 F. 2d 1144, 1147-48 (11th Cir. 1983), or when the parties fail to engage in settlement negotiations as adversaries, see White v. State of Alabama, 867 F. Supp. at 1539.") Rather, the terms of the proposed settlement demonstrate that class interests have been considered and protected and to the same extent as the interests of the negotiating parties in performing the arms-length negotiation of this settlement. This is aptly demonstrated by the Court's findings set out in Section II.A.3 of this Memorandum Opinion.

4.    *Remaining Factors.*

"The other four factors – the stage of the proceedings, likelihood of success at trial, the complexity, expense and likely duration of the lawsuit, and the range of possible recoveries – are interrelated," *Dillard*, 926 F. Supp. at 1062, and are often addressed together. *See also Austin*, 28 F. Supp. 2d at 1238. In this case these four factors clearly support judicial approval of the proposed settlement. The proposed settlement of class

29

claims in this action will secure for each class member reimbursement form Aetna of the entire amount by which each such class member was overcharged upon surrender of his or her Aetna individual annuity, plus accrued interest from the date of surrender to the date of disbursement. Class members will receive this reimbursement without having to engage in litigation or asserting claims against Aetna individually and without proceeding through the full prosecution of the claims in this class action. Further, while this settlement was reached after sufficient discovery was conducted for the named plaintiff and class counsel to make an informed evaluation of the likelihood of success at trial, the proposed settlement was reached at a very early stage in the litigation before the parties expended extensive time and resources in litigation. Full prosecution of this lawsuit with the aim of obtaining a recovery at trial, on the other hand, would have required the parties, counsel, and this Court to dedicate considerable amounts of time and money to reaching a final conclusion of these class claims.

Moreover, the likelihood of recovery at trial and range of possible recovery support approval of the proposed settlement. As stated above, the class breach of contract claims are not actually being compromised -- they are being conceded and satisfied by Aetna. Accordingly, class counsel has indicated that, even it the plaintiff class were to proceed with this lawsuit through trial, there is, in class counsel's opinion, no possibility of obtaining a greater recovery at trial than through this proposed settlement. This Court therefore finds that each of the factors set out by the Eleventh Circuit support judicial approval of the proposed settlement of this action.

5.    *Conclusion.*

Under the circumstances of this case, the Court finds that the proposed settlement of class claims  is fair, adequate, reasonable, and in the best interests of the members of the plaintiff class.  The proposed settlement is therefore approved by this Court.

C.    **Class Notice**

Notice of class certification and of the proposed settlement and dismissal of class claims must be provided to the members of Settlement Class.  FED. R. CIV. P. 23(b)(3), 23(e).  The notice required is "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2).  The United States Supreme Court has further stated that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).

In this case, Class Notice was sent to each member of the Settlement Class at his or her last known address via Registered Mail.  Class counsel has confirmed return receipt from 37 of the 39 class members.  In addition, class counsel has informed the Court that one of the remaining two class members was contacted by telephone and provided written Class Notice after the February 25, 2000, hearing.  Despite the continued diligent efforts of class counsel, one of the 39 class members has not successfully been provided Class Notice.

31

The Court finds that individual, written notice of class certification and of the settlement of class claims has been provided to every class member whose address was ascertainable through reasonable effort. The Court therefore holds that the notice requirements of Rule 23 have been satisfied in this case.

DONE, this 9 day of _March_____, 2000.

_____
The Honorable William M. Acker, Jr.
United States District Judge